UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIA SAN-MIGUEL HERRERA,<br><br>Petitioner,<br><br>v.<br><br>DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement,, JULIO HERNANDEZ, Acting Seattle Field Office Director, U.S. Immigration and Customs Enforcement, and NORTHWEST ICE PROCESSING CENTER,<br><br>Respondents. | CASE NO. 2:26-cv-02732-TL<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

This matter is before the Court on Petitioner Maria San-Miguel Herrera's Petition Writ of Habeas Corpus ("habeas petition"). Dkt. No. 4. Respondents are David J. Venturella, Acting Director, U.S. Immigration and Customs Enforcement ("ICE"); Julio Hernandez, Acting Seattle Field Office Director, ICE; and Northwest ICE Processing Center ("NWIPC"). *Id.* at 1; Dkt. No. 6 (Notice of Appearance) at 1 nn.1–2 (substituting Respondents Venturella and Hernandez

for their respective predecessors pursuant to Fed. R. Civ. P. 25(d)). The Court has a duty to construe pro se habeas pleadings liberally, *see Zetino v. Scott*, No. C26-1760, 2026 WL 1862079, at *1 (W.D. Wash. June 29, 2026) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and therefore interprets Petitioner's reference to the NWIPC as naming her immediate custodian, Bruce Scott, Warden of the NWIPC.[1] Having considered the habeas petition, Respondents' return memorandum (Dkt. No. 7), Petitioner's traverse (Dkt. No. 11), and the relevant record, the Court GRANTS the petition and ORDERS Respondents to provide Petitioner with a bond hearing.

## I. Background

Petitioner, a citizen of Mexico, has resided continuously in the United States since arriving as an infant in or around 1985. Dkt. No. 4 at 5. She became a lawful permanent resident through her marriage to a U.S. citizen in 2003 and has five U.S. citizen children. *Id.* In 2025, Petitioner pleaded guilty to Conspiracy to Transport Undocumented Aliens in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (A)(v)(I), and (B)(ii). She was sentenced to a six-month term of incarceration in federal prison, which she served in full. *Id.* at 6. At the time Petitioner entered her plea, she was pregnant with her youngest child. *See* Dkt. No. 11 at 1. Her child was born while she awaited sentencing, *id.*, and Petitioner has been in detention for the entirety of the child's life so far, seeing him only through video calls, Dkt. No. 4 at 3. Petitioner also alleges that she suffers from significant facial injuries from a motorcycle accident shortly before her arrest, which require urgent and specialized treatment she has not been able to receive at the NWIPC. *Id.*

On January 23, 2026, Petitioner completed her criminal sentence and was transferred directly to immigration detention. *Id.* at 7. Because her conviction is categorized as an

[1] Respondent Scott/NWIPC has not appeared in this action. Therefore, when used in the plural, "Respondents" refers to Respondents Venturella and Hernandez.

aggravated felony under 8 U.S.C. § 1101(a)(43)(N), Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(B). For this reason, Petitioner has never had an individualized determination as to whether continued custody is necessary because she poses a flight risk or danger to the community. Dkt. No. 4 at 4.

On May 28, 2026, Petitioner was ordered removed by an Immigration Judge ("IJ"). She represented herself pro se in her removal proceedings and does not appear to have raised any defenses to removal. *See id.* at 24–26 (Removal Order) (indicating Petitioner applied for voluntary departure but not cancellation of removal or adjustment of status, and waived the opportunity to apply for asylum, withholding of removal and relief under the Convention Against Torture). Petitioner timely filed a notice of appeal before the Board of Immigration Appeals ("BIA") on May 28, 2026. *Id.* at 8–9. As of the time of filing of the habeas petition, a briefing schedule had not yet been set. *Id.* at 9.

Petitioner filed the instant habeas petition on August 31, 2026, contesting her continued immigration detention without an individualized custody determination as a violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. Dkt. No. 4 at 12–13.[2] The habeas petition is now ripe for the Court's review.

## II. Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

[2] Petitioner styles her petition as raising four different "counts." *See* Dkt. No. 4 at 12–18. While each of these provides support for her claim of a Due Process violation arising from prolonged detention without an individualized custody determination, the Court finds that none of them presents a legally distinguishable basis for relief that falls outside the claim stated in Count I.

## III. DISCUSSION

The Parties agree that Petitioner is detained pursuant to 8 U.S.C. § 1226(c). *See* Dkt. No. 4 at 2; Dkt. No. 7 at 4–5. Under the Immigration and Nationality Act ("INA"), detention of noncitizens described in Section 1226(c)(1) is mandatory throughout the duration of removal proceedings, except in narrow circumstances. *See* 8 U.S.C. 1226(c)(4); *see also Demore v. Kim,* 538 U.S. 510, 513 (2003) (holding that Congress may constitutionally authorize mandatory detention of noncitizens under Section 1226(c) "for the brief period necessary for their removal proceedings"); *Jennings v. Rodriguez*, 583 U.S. 281 (2018) (holding that the INA contains no implicit limitation on the length of mandatory detention without a hearing). On remand from the Supreme Court's decision in *Jennings*, the Ninth Circuit expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so," and has directed district courts to determine "the minimum requirements of due process" for noncitizens subject to mandatory detention under the INA. *Rodriguez v. Marin*, 909 F.3d 252, 255, 256 (9th Cir. 2018) (citation modified). In the wake of *Jennings*, "nearly all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Maliwat v. Scott*, No. C25-788, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (citation modified); *see also Toktosunov v. Wamsley*, No. C25-1724, 2025 WL 3492858, at *3 (W.D. Wash. Dec. 5, 2025) (collecting cases).

### A. Whether Detention Without a Bond Hearing Has Become Unreasonably Prolonged

The prolonged-detention analysis courts in this District apply to detention under 8 U.S.C. 1226(c) is the "*Martinez* test" adopted in *Martinez v. Clark*, C18-1669, 2019 WL 5968089 (W.D.

Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov 13, 2019). Under the *Martinez* test, courts consider:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made [the petitioner] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

2019 WL 5968089, at *9. If the *Martinez* factors weigh in the petitioner's favor, the district court will find a due process violation, grant the habeas petition, and order the respondents to provide the petitioner with an individualized bond hearing that comports with procedural due process and the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) (requiring government to justify continued detention with clear and convincing evidence that Petitioner is a flight risk or danger to the community). Here, although Respondents contend that no due-process analysis is necessary, Dkt. No. 7 at 6, they acknowledge the *Martinez* test and address their arguments toward its factors, *id.* at 7–8. Petitioner also addresses these factors in her Traverse. *See* Dkt. No. 11 at 1–3. The Court finds that application of *Martinez* is appropriate here and considers its factors in turn.

**1. Length of Detention**

The length of detention is "the most important factor[.]" *Martinez*, 2019 WL 5968089, at *9. "Under this factor, the longer mandatory detention continues under 8 U.S.C. § 1226(c) beyond the brief period authorized in *Demore*,[3] the harder it becomes to justify without

[3] The petitioner in *Demore* had been in immigration detention for six months, which the Court, writing in 2003, described as "somewhat longer than the average[.]" 538 U.S. 510, 530–31. The record the Court considered at that time showed that "not only does detention [under Section 1226(c) have a definite termination point, in the majority of cases it lasts for less than . . . 90 days[.]" *Id.*at 529.

conducting an individualized bond hearing." *Sarr v. Scott*, 765 F. Supp. 3d 1091, 1098 (W.D. Wash. 2025). "Detention that has lasted longer than six months is more likely to be unreasonable, and thus contrary to due process, than detention of less than six months." *Id.* (citation modified) (quoting *Sajous v. Decker*, 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018)).

In this case, Petitioner has been in civil immigration detention for more than nine months. Respondents argue that, although "this is a bit longer than the six-month detention approved in *Demore*, 538 U.S. at 531, it is not so long as to violate due process and warrant the order of a bond hearing." Dkt. No. 7 at 7. But the question is not whether the length of detention *alone* violated due process, the question is which direction this factor points in a multifactor test. In *Martinez*, the court found that nearly 13 months of detention without a bond hearing weighed in favor of the petitioner. *Martinez*, 2019 WL 5968089, at *9. While petitioner's current term of detention is less than the 13-month period found to be unreasonably prolonged in *Martinez*, *see* 2019 WL 5968089, at *9, it is still more than the 6-month period of detention upheld in *Demore*, and, as Petitioner points out, the length of her detention will continue to grow (Dkt. No. 11 at 2). This factor therefore weighs in favor of requiring a bond hearing. *See Ferril v. Scott*, No. C26-3161, 2026 WL 3015397, at *2 (W.D. Wash. Oct. 7, 2026) (finding same where detention had reached ten months).

**2. Likely Duration of Future Detention**

The second factor for the Court to consider is "how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9. Respondents posit that "[t]he second factor is unknowable at this point" and this factor therefore "should be neutral." Dkt. No. 7 at 7. Petitioner counters that this uncertainty weighs in her favor,

highlighting Respondent's concession that the BIA has not set a briefing schedule as well as her right to a judicial appeal if she is unsuccessful before the BIA. Dkt. No. 11 at 2. Even after an appeal is fully briefed, the time required for the BIA to render decision, for any necessary remand to the immigration court, and for Petitioner to exhaust her judicial appeals, could well take years. *Ferril*, 2026 WL 3015397, at *2; *see also Juarez v. Wolf*, 2021 WL 2323436, at *5 (W.D. Wash. May 5, 2021) (estimating 2 years or more at the outset of a Ninth Circuit appeal), *report and recommendation adopted*, 2021 WL 2322823 (June 7, 2021). This factor thus favors requiring a bond hearing.

**3. Criminal History**

Under the third factor, the Court reviews the length of civil detention compared to the petitioner's criminal sentence. Under the fourth factor, the Court considers the nature of the crime. These factors "are suggestive of whether the detainee is a danger to the community or a risk of flight such that a bond hearing would be futile." *Juarez*, 2021 WL 2323436, at *5.

At nine months, Petitioner's civil detention has already significantly exceeded her criminal sentence. As Respondents appears to concede, *see* Dkt. No. 7 at 7, the third factor favors requiring a bond hearing.

Respondents argue that the fourth factor favors the government, because Petitioner's "crime involved significant deception and evasion of immigration and law enforcement officials, demonstrating that she has intimate knowledge of how to defeat and evade U.S. immigration law." Dkt. No. 7 at 7. While this argument appears at first glance to have some logic to it, it is not actually clear how Petitioner's "knowledge" of smuggling undocumented people into the United States would enable her to "defeat and evade" immigration law as it pertains to her own removal case. At the time *Martinez* was decided, nearly all Section 1226(c) detainees had some

type of criminal conviction,[4] and it is not clear why a single conviction for Conspiracy to Transport Undocumented Aliens is a criminal history whose "nature" weighs against granting an individualized bond determination. Respondents point to no analogous cases, nor to any authority indicating how convictions should be weighed for the purposes on this factor. Unlike the majority of convictions subject to mandatory detention under Section 1226(c), Petitioner's conviction is for a non-violent, non-drug-related offense, and the length of her sentence suggests that it is among the less serious offenses that fall within this provision. Further, Petitioner agreed to cooperate with the government and provide information relating to criminal activity known to her. Dkt. No. 4-1 (Petition Exhiits) at 79 (Plea Agreement). The Court further finds that a bond hearing would not be futile, particularly considering Petitioner's cooperation with the government in pleading guilty to her sole criminal charge and the significant family ties and caregiving responsibilities she may present to the IJ as evidence that she poses no risk of flight.

Therefore, the fourth factor weighs in favor of requiring a bond hearing.

**4. Conditions of Detention**

Next, the Court considers the fifth *Martinez* factor—the conditions of detention. 2019 WL 5968089, at *10. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger [the] argument that [they are] entitled to a bond hearing." *Id.* (citation modified).

"[C]ourts within this district have characterized the conditions in NWIPC as that of a prison, including problems with food, medical neglect, and cleanliness." *Shevchuk v. Scott*, 2026 WL 1413609, at *2 (W.D. Wash. May 20, 2026); *see also Hossain v. Scott*, 2026 WL 1533003, at *6 (W.D. Wash. June 1, 2026) (collecting cases on NWIPC conditions). Respondents are fully

---

[4] The addition of 8 U.S.C. § 1226(c)(1)(E) pursuant to the Lakan Riley Act, Pub. L. No. 119-1 (2025), significantly expanded Section 1226(c)'s application to noncitizens who are accused of, but not convicted of, certain crimes.

aware of the weight of this persuasive precedent but do not acknowledge it, instead arguing that Petitioner (who is proceeding pro se) has made no conditions-of-detention allegations except that she has been unable to access medical treatment for her injuries, and that this allegation is unfounded because Petitioner "has been seen by medical providers twelve times" and has made only "minimal complaints about symptoms arising from her motorcycle accident to NWIPC medical personnel." Dkt. No. 7 at 8 (citing Dkt. No. 10 (Wang Decl.) ¶ 9). But Respondents misconstrue the declaration on which they rely, and their declarant, Dr. Eddie Wang, overstates his knowledge. Dr. Wang, a Board-Certified Family Medicine physician and the Clinic Director of the NWIPC, does not claim to be personally familiar with Petitioner's treatment or even to have ever discussed her case with her treating practitioners. *See generally* Dkt. No. 10. He attributes his knowledge of her treatment to his "case review, obtained from various records and systems maintained by ICE in the regular course of business." *Id.* ¶ 6. Such review cannot possibly establish that "Petitioner has not mentioned any need of reconstructive surgery assessment to medical providers" (*id.* ¶ 12); it can only establish that no such "mentions" were memorialized in her treatment notes.[5] This has little probative value, especially since, as Petitioner points out, the twelve visits to medical providers Respondents refer to were all, according to Dr. Wang's declaration, with Behavioral and Mental Health providers, not general medical personal. *See* Dkt. No. 11 at 2–3; Dkt. No. 10 ¶ 9.

While the Court does not have sufficient information to determine whether Petitioner is in need of medical care that she cannot access at NWIPC, it sees no reason to break from the repeated findings of courts in this District that present conditions in NWIPC are similar to, or worse than, prison conditions. This factor weighs in favor of Petitioner.

---

[5] Respondents have not provided Petitioner's actual medical records or any declaration by any person with personal knowledge of her treatment, only Dr. Wang's skeletal inferences drawn from absent records.

**5. Delays in Removal Proceedings**

Under the sixth and seventh *Martinez* factors, the Court considers delays in the removal proceedings caused by the detainee or the government, respectively. 2019 WL 5968089 at *10. A "[p]etitioner is entitled to raise legitimate defenses to removal," and exercising one's legal avenues to challenge to removal "cannot undermine [a] claim that detention has become unreasonable." *Juarez*, 2021 WL 2323436, at *6 (citation modified).

Here, the Parties agree that neither Party has caused delay. *See* Dkt. No. 7 at 8; Dkt. No. 11 at 3. Therefore, these factors are neutral.

**6. Likelihood that Proceedings Will Result in a Final Order of Removal**

Finally, the Court considers the likelihood that the removal proceedings will result in a final order of removal. *See Martinez*, 2019 WL 5968089, at *10. "In other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Id.* "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Id.*

Petitioner disagrees, arguing, "I am challenging the Immigration Judge's decision through the process Congress provided: I filed a timely appeal with the Board of Immigration Appeals, and that appeal remains pending." Dkt. No. 11 at 3.[6] But filing an appeal is not itself a defense to removal. If Petitioner did not raise any defenses to removal before the IJ, as appears to be the case, it is not apparent that her appeal has any legal basis or can possibly succeed.

Accordingly, the Court concludes that this factor weighs in favor of the government.

---

[6] Petitioner also asserts that her oldest son has filed a new Form I-130 (Petition for Alien Relative) on her behalf. Dkt. No. 11 at 3. However, she appears to concede that this is not directly relevant to her current removal proceedings but rather demonstrates "substantial ties to the United States" that could be considered at a potential bond hearing. *Id.* This fact is therefore irrelevant to the eighth *Martinez* factor.

* * *

In sum, five of the eight *Martinez* factors, including the most important factor, weigh in favor of granting Petitioner a bond hearing, two are neutral, and one weighs against granting a bond hearing. Given the weight and number of the factors that favor Petitioner, the Court finds that her detention without a bond hearing has become unreasonably prolonged. *See, e.g.*, *Medina v. Scott*, No. C26-2294, 2026 WL 2676649, at *3 (W.D. Wash. Sept. 11, 2026) (finding petitioner entitled to a bond hearing where two or three factors favor petitioner, the rest are neutral, and none favors the government); *Smbat v. Ice Field Off. Dir.,* No. C26-818, 2026 WL 1842663, at *5 (W.D. Wash. June 26, 2026) (same where three factors favor petitioner, three are neutral, and two favor the government); *Sarr*, 765 F. Supp. 3d at 1109 (same where six factors favor petitioner, one is neutral, and one favors the government). Petitioner is therefore entitled to habeas relief.

**B. Appropriate Relief**

Having found that Petitioner's prolonged detention without a bond hearing has become unreasonable, the Court will now address her requests for relief. Petitioner asks the Court to order Respondents to provide her with "a prompt individualized custody hearing before a neutral decision maker at which the government bears the burden of demonstrating by clear and convincing evidence that Petitioner's continued detention is necessary because she presents either a danger to the community or a significant flight risk." Dkt. No. 4 at 20. Petitioner's proposed remedy and assignment of burden is supported by Ninth Circuit precedent, *see generally Singh v. Holder*, 638 F.3d 1196, and her request is consistent with relief commonly ordered in this District to habeas petitioners who prevail under *Martinez. See, e.g.*, *Medina*, 2026 WL 2676649, at *4 (ordering bond hearing within 14 days that "shall comply with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)—there must be a

contemporaneous record of the hearing, and the Government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community."); *Solis Duran v. ICE Field Off. Dir.*, No. C26-1824, 2026 WL 2225424, at *4 (W.D. Wash. Aug. 3, 2026) (same); *Castaneda-Garcia v. Blanche*, No. C26-1204, 2026 WL 1948001, at *4 (W.D. Wash. July 6, 2026) (same but without mention of contemporaneous record). The Court will order this relief. In lieu of a hearing, Respondents may comply with this Order by releasing Petitioner.

## IV. CONCLUSION

Accordingly, the Court ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is GRANTED.

(2) Within **fourteen (14) days** of this Order, Respondents SHALL either release Petitioner or provide her with a bond hearing before an immigration judge. At the hearing, the government SHALL bear the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk. Respondents SHALL ensure that the hearing is recorded.

(3) Within **fifteen (15) days** of this Order, Respondents SHALL file a Status Report with the Court either confirming that Petitioner received a bond hearing—and informing the Court of the results of that hearing—or confirming her release.

Dated this 23rd day of October, 2026.

Tana Lin
United States District Judge